1
2
3
4
5
6
7

8    UNITED STATES DISTRICT COURT

9    NORTHERN DISTRICT OF CALIFORNIA

10    SAN JOSE DIVISION

11

E. G., a minor, by and through her Guardian Ad )
Litem, ALFONSO GOMEZ LEPE,                    )
                                              )
                    Plaintiff,                )
        v.                                    )
                                              )
ALBERTO MARTINEZ MALDONADO;                   )
SECURITY CODE 3 aka SECURITY CODE 3,          )
INC.; WATSONVILLE COMMUNITY                   )
HOSPITAL; DR. GORDON KAPLAN, in his           )
individual capacity and in his official capacity )
acting under color of law; DR. STERLING       )
LEWIS, in his individual capacity and in his  )
official capacity acting under color of law; DR. )
STUART A. SIMON, in his individual capacity   )
and in his official capacity acting under color of )
law; and DOES 1 through 100, in their individual)
capacities and in their official capacities acting )
under color of law,                           )
                                              )
                    Defendants.               )
                                              )
                                              )
_____ )

Case No.: 5:14-CV-01053-LHK

ORDER GRANTING MOTION TO
DISMISS DEFENDANTS KAPLAN,
LEWIS, AND SIMON WITH LEAVE TO
AMEND

**United States District Court**
For the Northern District of California

1

Plaintiff E. G. ("Plaintiff"), a minor, brings a complaint by and through her guardian ad litem, Alfonso Gomez Lepe, against defendants Alberto Martinez Maldonado ("Maldonado"), Security Code 3, Inc. ("SC3"), Watsonville Community Hospital ("WCH"), Dr. Gordon Kaplan ("Dr. Kaplan"), Dr. Sterling Lewis ("Dr. Lewis"), Dr. Stuart A. Simon ("Dr. Simon"), and Does 1 through 100 (collectively, "Defendants") for a series of alleged violations and torts. ECF No. 1 ("Compl."). Plaintiff's complaint against Drs. Kaplan, Lewis, and Simon (collectively, the "Doctors") alleges violations of 42 U.S.C. § 1983 ("section 1983"), negligence, violation of California's Unruh Civil Rights Act ("Unruh Act"), intentional infliction of emotional distress ("IIED"), and civil conspiracy. *Id.*

Before the Court is the Doctors' Motion to Dismiss. ECF No. 35 ("Mot."). Plaintiff opposed the motion. ECF No. 38 ("Opp'n"). The Doctors filed a reply. ECF No. 39 ("Reply").

Having considered the submissions of the parties and the relevant law, and for good cause shown, the Court hereby GRANTS the Doctors' Motion to Dismiss.

# I.  BACKGROUND

## A.  Factual Background

Late in the evening of May 9, 2013, Plaintiff, a fourteen-year-old minor, was brought to the WCH Emergency Room because she was experiencing suicidal ideations. Compl. ¶¶ 1, 21. The Doctors and other intake professionals determined that Plaintiff was a danger to herself and needed to be involuntarily committed under California Welfare & Institutions Code §§ 5150, 5585.50 ("5150/5585.50"). *Id.* ¶¶ 20-21. The Doctors involuntarily committed Plaintiff and admitted her to the WCH Emergency Room for a twenty-four-hour hold pending transfer to a county-designated facility. *Id.* ¶ 21. At that time, the Doctors learned that Plaintiff "was experiencing behavioral issues related to school attendance and family relationships," that "she had a history of psychiatric illness with auditory hallucinations," and that "she had expressed an intention to spend the night for the purposes of engaging in inappropriate sexual conduct with an 18 year old boy in the near future." *Id.* ¶ 23. The Doctors also learned that Plaintiff's "foster father and family were deeply

Case No.: 5:14-CV-01053-LHK
ORDER GRANTING MOTION TO DISMISS DEFENDANTS KAPLAN, LEWIS, AND SIMON WITH LEAVE TO AMEND

United States District Court
For the Northern District of California

1  concerned about [her] psychological vulnerability to engage in inappropriate sexual conduct with

2  males, including those who were 18 years old or older." *Id.*

3          During the relevant time period, WCH had a contract to provide medical services to Santa

4  Cruz County. Compl. ¶ 18. Since about 2010, WCH Emergency Room physicians, social workers,

5  and consulting psychiatrists have been authorized by Santa Cruz County to initiate the process of

6  involuntarily committing patients for psychiatric services under 5150/5585.50. *Id.* ¶ 20. WCH

7  contracted with SC3 to supply security services and guards to the hospital. *Id.* ¶ 19.

8          After Plaintiff was involuntarily committed, Maldonado, a security guard employed by

9  SC3, was assigned to watch her from 11 p.m. on May 9, 2013, to 6 a.m. on May 10, 2013. Compl.

10  ¶ 29. Though counselors, nurses, and other qualified individuals assessed Plaintiff intermittently

11  during the night, she was left alone with Maldonado for more than an hour and a half on at least

12  one occasion. *Id.* While alone, the two began to talk. *Id.* ¶ 30. Eventually, they kissed. *Id.* Then,

13  without Plaintiff's consent,[1] Maldonado inserted his fingers into Plaintiff's vagina and performed

14  oral sex on her. *Id.* This unlawful sexual conduct took place while Maldonado was on duty and in

15  full uniform. *Id.* Once the encounter was over, Maldonado gave Plaintiff his cell phone number.

16  *Id.* ¶ 31.

17          On May 10, 2013, following further treatment by Dr. Kaplan, Plaintiff was transferred by

18  WCH to St. Mary's Hospital Psychiatric Division in San Francisco for further evaluation. Compl.

19  ¶¶ 32-33. On May 14, 2013, St. Mary's released Plaintiff, and she returned home. *Id.* ¶ 33. The

20  next day, Plaintiff again expressed suicidal ideations and was brought back to WCH, where she

21  was monitored once more by Maldonado. *Id.* ¶ 34. Plaintiff does not allege that the Doctors, or

22  anyone else working for WCH or SC3, had any knowledge or suspicion of Maldonado's unlawful

23  sexual conduct at the time she was readmitted.

24          WCH then transferred Plaintiff to the John Muir Behavioral Health Center in Concord,

25  California. Compl. ¶ 34. She was released on May 22, 2013. *Id.* Between May 9, 2013, and May

26

27          [1] Plaintiff, as a fourteen-year-old minor, was incapable of giving consent. *See* Cal. Penal
Code § 261.5. Further, Plaintiff told Maldonado "no" in response to his saying that he wanted to
28  perform oral sex on her. Compl. ¶ 30.

Case No.: 5:14-CV-01053-LHK
ORDER GRANTING MOTION TO DISMISS DEFENDANTS KAPLAN, LEWIS, AND SIMON WITH LEAVE TO
AMEND

25, 2013, Maldonado exchanged text messages with Plaintiff. *Id.* ¶ 35.  On May 25, 2013, Maldonado arranged to meet Plaintiff at WCH. *Id.*  From there, the two went to Maldonado's car and had sexual intercourse. *Id.*  On May 28, 2013, when confronted by police, Maldonado admitted his unlawful conduct with Plaintiff. *Id.* ¶ 36.  Maldonado was charged with nine felony counts for his sexual misconduct, pled nolo contendere to three of them, and was sentenced to three years in state prison. *Id.* ¶ 38.

### B.   Procedural History

Plaintiff filed her complaint in the United States District Court for the Northern District of California, on March 6, 2014.  In her complaint, Plaintiff alleges twenty-seven causes of action, eleven of which name the Doctors.  Those eleven causes of action are: (1) four claims under section 1983, Compl. ¶¶ 50-82; (2) four claims of negligence, *id.* ¶¶ 116-25, 129-42; (3) one claim under the Unruh Act, Cal. Civ. Code § 51, *id.* ¶¶ 147-51; (4) one claim of IIED, *id.* ¶¶ 189-92; and (5) one claim of civil conspiracy, *id.* ¶¶ 198-203.

As to section 1983, Plaintiff alleges that the Doctors, acting under color of state law, violated her Fourteenth Amendment due process rights because they were consciously indifferent to unsafe conditions during her period of involuntary commitment.  Compl. ¶¶ 50-62.  Second, Plaintiff claims that the Doctors are liable under section 1983 as supervisors. *Id.* ¶¶ 63-69.  Third, Plaintiff alleges that the Doctors are liable under section 1983 for failing to train the security guards who monitored her. *Id.* ¶¶ 70-75.  Fourth, Plaintiff claims that the constitutional injuries she suffered—to wit, Maldonado's violation of her Fourth Amendment right to be free from unreasonable seizures and the Doctors' violation of her Fourteenth Amendment right to safe conditions while involuntarily committed—were accomplished pursuant to the Doctors' official policy of having untrained security guards monitor and supervise involuntarily committed patients. *Id.* ¶¶ 76-79.  Plaintiff also claims that the Doctors ratified this alleged policy, in violation of section 1983. *Id.* ¶ 80.

Furthermore, Plaintiff alleges negligence on the grounds that the Doctors (1) were generally negligent, Compl. ¶¶ 116-20; (2) negligently inflicted emotional distress, *id.* ¶¶ 121-28; (3)

Case No.: 5:14-CV-01053-LHK
ORDER GRANTING MOTION TO DISMISS DEFENDANTS KAPLAN, LEWIS, AND SIMON WITH LEAVE TO AMEND

**United States District Court**
For the Northern District of California

1   negligently supervised Plaintiff, *id.* ¶¶ 129-33; and (4) negligently hired, trained, supervised, and

2   retained hospital staff including Maldonado, *id*. ¶¶ 134-42.  In support of her claims, Plaintiff

3   advances two theories of negligence liability.  First, the Doctors breached their duty of reasonable

4   care to Plaintiff by allowing her to be alone with a male guard for an extensive period of time,

5   knowing that she was uncommonly vulnerable to unlawful sexual advances.  Compl. ¶¶ 27-28,

6   130-31.  Second, the Doctors breached their duty of reasonable care to Plaintiff by providing her an

7   inadequately trained security guard who sexually assaulted her.  *Id.* ¶¶ 26, 135-40.  These breaches,

8   Plaintiff alleges, proximately caused the injuries she suffered.  *Id.* ¶¶ 40-41, 132, 141.

9        In addition, Plaintiff alleges that the Doctors committed a series of intentional torts.

10   Specifically, she claims that the Doctors intentionally discriminated against her on the basis of her

11   sex, disability, or medical condition, in violation of the Unruh Act.  Compl. ¶¶ 147-51.  She claims

12   further that the Doctors intentionally inflicted emotional distress on her, *id.* ¶¶ 189-92, and that the

13   Doctors conspired amongst themselves or with others to injure her, *id.* ¶¶ 198-203.

14        In lieu of an answer, the Doctors filed the instant Motion to Dismiss on July 16, 2014.  Mot.

15   at 22.[2]  Plaintiff opposed the motion on August 27, 2014.  Opp'n at 21.  The Doctors replied on

16   September 17, 2014.  Reply at 14.

17   **II.      LEGAL STANDARDS**

18        **A.      Motion to Dismiss Under Rule 12(b)(6)**

19        Pursuant to Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss an

20   action for failure to allege "enough facts to state a claim to relief that is plausible on its face."  *Bell*

21   *Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the

22   plaintiff pleads factual content that allows the court to draw the reasonable inference that the

23   defendant is liable for the misconduct alleged.  The plausibility standard is not akin to a

24   'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted

25

26   _____
        [2] WCH, for its part, filed an answer on April 2, 2014.  ECF No. 17.  SC3 did the same on
27   April 18, 2014.  ECF No. 22.  Although Maldonado was served notice of the complaint in state
     prison on March 20, 2014, *see* ECF No. 8, he has not filed an answer or otherwise responded.  On
28   June 24, 2014, Plaintiff moved for entry of default against him.  ECF No. 28.

Case No.: 5:14-CV-01053-LHK
ORDER GRANTING MOTION TO DISMISS DEFENDANTS KAPLAN, LEWIS, AND SIMON WITH LEAVE TO
AMEND

unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).  For purposes of ruling on a Rule 12(b)(6) motion, the Court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

The Court is not required to "'assume the truth of legal conclusions merely because they are cast in the form of factual allegations.'"  *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (per curiam) (quoting *W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981)).  Mere "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004); *accord Iqbal*, 556 U.S. at 679-80.  "[T]o be entitled to the presumption of truth, allegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).  In addition, "the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Id.*

### B.    Leave to Amend

If the Court determines that the complaint should be dismissed, it must then decide whether to grant leave to amend.  Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend "shall be freely given when justice so requires," bearing in mind "the underlying purpose of Rule 15 to facilitate decisions on the merits, rather than on the pleadings or technicalities." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (internal quotation marks and alterations omitted).  When dismissing a complaint for failure to state a claim, "a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Id.* at 1130 (internal quotation marks omitted).  Accordingly, leave to amend generally shall be denied only if allowing amendment would unduly prejudice the opposing party, cause undue delay, or be futile, or if the

**United States District Court**
For the Northern District of California

Case No.: 5:14-CV-01053-LHK
ORDER GRANTING MOTION TO DISMISS DEFENDANTS KAPLAN, LEWIS, AND SIMON WITH LEAVE TO AMEND

1    moving party has acted in bad faith.  *Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532

2    (9th Cir. 2008).

3    **III.     DISCUSSION**

4              The Doctors seek to dismiss Plaintiff's complaint as to all eleven causes of action asserted

5    against them, arguing that none states a claim upon which relief can be granted.  Mot. at 2.  For

6    each claim, the Doctors argue that Plaintiff's complaint alleges only conclusions, not facts, in

7    support.  *Id.* at 2-4.

8              For the reasons stated below, the Court finds that Plaintiff has failed to plead sufficient facts

9    supporting a plausible claim for relief under section 1983.  In the absence of any federal claims, the

10   Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state law claims for

11   negligence, violation of the Unruh Act, IIED, and civil conspiracy.  Accordingly, the Court

12   GRANTS the Doctors' Motion to Dismiss.

13   **A.     Federal Claims Under Section 1983**

14             Under section 1983, a plaintiff must: (1) allege violation of a right secured by the

15   Constitution and laws of the United States; and (2) show that the alleged deprivation was

16   committed by a person acting under color of state law.  *West v. Atkins*, 487 U.S. 42, 48 (1988).  For

17   the alleged deprivation to be "under color of state law," it must (1) result from a government

18   policy; and (2) the party charged with deprivation must be fairly said to be a governmental actor.

19   *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 935-37 (1982).  Private parties do not generally act

20   under color of state law, and there is a presumption that private conduct does not constitute

21   governmental action.  *Sutton v. Providence St. Joseph Med. Ctr.*, 192 F.3d 826, 835 (9th Cir.

22   1999).  One way courts determine whether a private actor's conduct qualifies as state action for

23   purposes of section 1983 is the "public function" test.  *See Kirtley v. Rainey*, 326 F.3d 1088, 1092-

24   93 (9th Cir. 2003).  "The public function test is satisfied only on a showing that the function at

25   issue is both traditionally and exclusively governmental."  *Id.* at 1093 (internal quotation marks

26   omitted).

27

28

Case No.: 5:14-CV-01053-LHK
ORDER GRANTING MOTION TO DISMISS DEFENDANTS KAPLAN, LEWIS, AND SIMON WITH LEAVE TO
AMEND

1    Here, the involuntary commitment process results from a California government policy

2    (i.e., 5150/5585.50), satisfying *Lugar*'s first prong.  As to the second prong, Plaintiff alleges that

3    WCH had a contract to provide medical services to Santa Cruz County.  Compl. ¶ 18.  Plaintiff

4    alleges further that since about 2010, WCH Emergency Room physicians, social workers, and

5    consulting psychiatrists have been authorized by Santa Cruz County to initiate the process of

6    involuntarily committing patients for psychiatric services under 5150/5585.50.  *Id.* ¶ 20.

7    California, says Plaintiff, has outsourced its involuntary commitment function to hospitals like

8    WCH and their doctors, a function that would otherwise be performed exclusively by state

9    officials.  *See West*, 487 U.S. at 57 ("[A]lthough the provision of medical services is a function

10   traditionally performed by private individuals, the context in which respondent performs these

11   services for the State . . . distinguishes the relationship between respondent and West from the

12   ordinary physician-patient relationship.").  As the Doctors working in the WCH Emergency Room

13   have allegedly been endowed with the governmental function of involuntarily committing patients

14   pursuant to California statute, the Court finds it plausible that they acted as governmental agents in

15   performing this public function.  *See Colin M. ex rel. Kelly v. St. Helena Hosp.*, No. C 08-01930

16   WHA, 2008 WL 4239770, at *5-6 (N.D. Cal. Sept. 12, 2008) (finding private hospital and private

17   doctor to be state actors where a minor was involuntarily committed).

18      With Plaintiff having sufficiently alleged that the Doctors acted "under color of state law,"

19   the Court now turns to her individual causes of action under section 1983.

20          **1.    Conscious Indifference to Unsafe Conditions (Second Cause of Action)**[3]

21      "The combination of a patient's involuntary commitment and his total dependence on his

22   custodians obliges the government to take thought and make reasonable provision for the patient's

23   welfare."  *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 852 n.12 (1998) (citing *Youngberg v.*

24   *Romeo*, 457 U.S. 307 (1982)).  "Relying upon *Youngberg*, the Ninth Circuit has repeatedly

25   recognized the Fourteenth Amendment right of involuntarily committed patients to safe

26   confinement conditions."  *Ammons v. Wash. Dep't of Soc. & Health Servs.*, 648 F.3d 1020, 1028

27   ───────────────────
          [3] The ordinal numbers refer to those in Plaintiff's complaint.  So although this is the first
28   cause of action asserted against the Doctors, it is the second one listed in the complaint.

8

1    (9th Cir. 2011).  In particular, it is settled that "(1) patients have a constitutional right to be safe in

2    the state institution to which they are committed, and that (2) in the face of known threats to patient

3    safety, state officials may not act (or fail to act) with conscious indifference, but must take

4    adequate steps in accordance with professional standards to prevent harm from occurring."  *Id.* at

5    1030 (quoting *Neely v. Feinstein*, 50 F.3d 1502, 1508 (9th Cir. 1995)).

6        Importantly, "conscious indifference" is not the same as the "deliberate indifference"

7    standard used in the Eighth Amendment cruel and unusual punishment context.  *Ammons*, 648 F.3d

8    at 1029.  Rather, conscious indifference has been equated to "gross negligence," *id.* (quoting *Neely*,

9    50 F.3d at 1507), at least where "captive plaintiffs [have been] injured because of a miscarriage of

10   the professional judgment of a [government] hospital official," *id.* at 1029 n.6 (second alteration in

11   original) (quoting *L.W. v. Grubbs*, 92 F.3d 894, 897 (9th Cir. 1996)); *see also Estate of Conners by*

12   *Meredith v. O'Connor*, 846 F.2d 1205, 1208 (9th Cir. 1988) (affirming denial of summary

13   judgment against hospital administrators where an involuntarily committed patient was murdered

14   by another patient and the hospital's safety protocols were alleged to be "grossly and totally

15   inadequate").

16       Two cases similar to the one at bar, *Neely* and *Ammons*, provide the Court guidance.  In

17   *Neely*, a female patient who had been allegedly molested by a hospital staff member named Terry,

18   brought a section 1983 suit against state mental hospital administrators and staff.  *Neely*, 50 F.3d at

19   1505-06.  Neely named the hospital superintendent, the director of nursing, the chairperson of the

20   committee assigned to investigate prior accusations against Terry, and the building supervisor as

21   defendants.  *Id.* at 1506-07.  Prior to Neely's allegations, two other patients had accused Terry of

22   sexually assaulting them.  *Id.* at 1505.  In response to both prior incidents, the hospital

23   superintendent had convened a committee to investigate the allegations and, both times, the

24   committee determined "that there was no evidence to substantiate the allegations against Terry."

25   *Id.* at 1506.  After the second investigation had concluded, the superintendent nevertheless issued a

26   reprimand to Terry for showing "very poor judgment" in placing himself in situations where he

27   was alone with female patients.  *Id.*  The director of nursing, on behalf of the superintendent, issued

28

Case No.: 5:14-CV-01053-LHK
ORDER GRANTING MOTION TO DISMISS DEFENDANTS KAPLAN, LEWIS, AND SIMON WITH LEAVE TO
AMEND

**United States District Court**
For the Northern District of California

United States District Court
For the Northern District of California

1    an oral directive barring Terry from working in the women's ward or staying "in one-to-one

2    seclusion" with female patients.  *Id.*  That restriction was later lifted, and Terry was assigned to

3    work one-on-one with Neely.  *Id.*  It was then that Terry allegedly assaulted Neely.  *Id.*

4            The Ninth Circuit, on appeal from summary judgment, concluded that the hospital's lower-

5    level supervisors were qualifiedly immune because they had merely complied with hospital

6    regulations and supervisory guidance, rendering their conduct reasonable in light of practical

7    considerations.  *Neely*, 50 F.3d at 1511.  As to the superintendent, however, the Court of Appeals

8    found that he, as head of the hospital, had failed to protect the safety of female patients such as

9    Neely.  "A reasonable hospital official," the court in *Neely* held, "would not have disregarded so

10   summarily the substantial evidence that pointed to Terry's misconduct."  *Id.* at 1510.  Instead, "a

11   reasonable official would have made clear, in writing, the directive that prohibited Terry from

12   working with female patients, and would have implemented appropriate procedures to ensure that

13   he or she would be informed of any changes made to that directive."  *Id.*  As a result, the Ninth

14   Circuit found there were sufficient facts to support a jury finding that the superintendent had

15   substantially departed from accepted professional judgment.  *Id.*

16           In *Ammons*, a patient at a children's psychiatric hospital accused a male staff member

17   named Grant of sexually molesting her.  *Ammons*, 648 F.3d at 1023.  The chief executive officer

18   ("CEO") of the hospital restricted Grant's access to female patients during the investigation.  *Id.*

19   The molested patient subsequently recanted her accusation because "she was upset about losing her

20   contact with Grant," and the investigation was closed.  *Id.*  A second patient, Ammons, a thirteen-

21   year-old girl, entered the facility later that same year.  *Id.*  During Ammons's stay, she became

22   romantically involved with Grant to the point that Ammons's foster care caseworker requested that

23   she not be left alone with him.  *Id.* at 1024.  Despite these voiced concerns, Grant spent time alone

24   with Ammons and sexually molested her.  *Id.* at 1024-25.  Ammons sued LaFond, the hospital's

25   former CEO, and Webster, the director of nursing who had served as CEO for the last few weeks of

26   Ammons's stay.  *Id.* at 1025.  In her suit, Ammons brought claims under section 1983 as well as

27   claims for negligence.  *Id.*

28

10

On appeal from the denial of summary judgment as to both LaFond and Webster, the Ninth Circuit delivered a mixed ruling. *Ammons*, 648 F.3d at 1023. The Court of Appeals found that LaFond had been consciously indifferent and had departed from reasonable professional judgment in allowing Grant to be alone with Ammons because she was aware that Grant had been investigated for sexual abuse, and the hospital possessed "overwhelming information and signals that Grant was pursuing improper relationships with female patients and with Ammons specifically." *Id.* at 1032. The court in *Ammons* also noted that LaFond, as head of the hospital, was ultimately accountable for the safety of its patients. *Id.* at 1033. As to Webster, however, the Ninth Circuit found that there were insufficient facts alleged against him to survive summary judgment because Webster had only been CEO for a few weeks, and there was no evidence that he knew about the past accusations against Grant. *Id.* at 1036. The Court of Appeals arrived at this conclusion despite the fact that Webster "had access to information about Ammons, including her intake assessment indicating that she was particularly vulnerable to sexual abuse." *Id.* at 1035-36.

Unlike in *Neely* or *Ammons*, Plaintiff here does not allege any facts indicating that Maldonado had a prior history of sexual misconduct, or that he otherwise posed a specific threat to her. Nor does Plaintiff allege any facts suggesting that the Doctors even knew Maldonado, let alone that the Doctors had any reason to believe he posed a threat to female patients. Instead, Plaintiff alleges only that the Doctors were consciously indifferent to a high risk of sexual abuse because after she told them of her desire to engage in sexual conduct with an adult male in the near future, they took no preventative action. Compl. ¶¶ 23, 27, 55-57. Plaintiff alleges further that her family informed the Doctors of her "vulnerability to engage in inappropriate sexual conduct with males." *Id.* ¶ 23.

In response, the Doctors argue that Plaintiff has failed to allege sufficient facts showing that they were consciously indifferent to the potential harm Plaintiff faced arising out of her own interest in being sexually active. Mot. at 11-12; Reply at 3-6. According to the Doctors, the information Plaintiff allegedly communicated to them does not plausibly establish that they acted

Case No.: 5:14-CV-01053-LHK
ORDER GRANTING MOTION TO DISMISS DEFENDANTS KAPLAN, LEWIS, AND SIMON WITH LEAVE TO AMEND

1    with conscious indifference to a risk that she would engage in inappropriate sexual conduct with

2    Maldonado or any other WCH staff member.  Reply at 3-6.

3         Taking Plaintiff's allegations as true, the Court concludes that Plaintiff has not plausibly

4    alleged conscious indifference "amounting to gross negligence" on the part of the Doctors.

5    *Ammons*, 648 F.3d at 1029.  The Court so finds because Plaintiff has failed to differentiate between

6    the Doctors in her complaint.  To state a valid section 1983 claim, "a plaintiff must plead that each

7    government-official defendant, through the official's *own individual actions*, has violated the

8    Constitution."  *Iqbal*, 556 U.S. at 676 (emphasis added).  In other words, the complaint must "tie[]

9    the constitutional violations to the individual defendants."  *OSU Student Alliance v. Ray*, 699 F.3d

10   1053, 1069 (9th Cir. 2012); *see also Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998)

11   (order) ("A plaintiff must allege facts, not simply conclusions, that show that an individual was

12   personally involved in the deprivation of his civil rights.  Liability under § 1983 must be based on

13   the personal involvement of the defendant.").

14        Plaintiff has not done so.  Instead, she simply lumps the Doctors into one group, assuming

15   that each of them was consciously indifferent under section 1983 for the exact same reasons.

16   Plaintiff makes virtually no effort to allege what role each individual doctor played, what actions

17   each doctor took or did not take, and how each doctor came to know of her heightened

18   vulnerability.  In Plaintiff's fifty-two-page complaint, the Court finds just two instances where all

19   three of the Doctors are not lumped together as one.  *See* Compl. ¶ 21 (asserting that Plaintiff "was

20   involuntarily committed and admitted to Watsonville Community Hospital's Emergency Room by

21   Dr. Gordon Kaplan [and] Dr. Sterling Lewis," with no mention of Dr. Simon); *id.* ¶ 32 (asserting

22   that Dr. Kaplan, after evaluating Plaintiff on May 10, 2013, noted that she "may have suffered from

23   neglect and/or abuse from her biological parents").  At no other time does Plaintiff attempt to

24   distinguish the individual conduct or roles of the Doctors, despite mentioning them collectively

25   dozens of times.  *Cf. Ammons*, 648 F.3d at 1023-25 (detailing the specific allegations of conscious

26   indifference plaintiff had asserted against each individual defendant); *Neely*, 50 F.3d at 1505-06

27   (same).  As a result, Plaintiff has failed to state a claim of conscious indifference under section

28

12

Case No.: 5:14-CV-01053-LHK
ORDER GRANTING MOTION TO DISMISS DEFENDANTS KAPLAN, LEWIS, AND SIMON WITH LEAVE TO AMEND

1983.  *See OSU Student Alliance*, 699 F.3d at 1078 (dismissing section 1983 claims against the

university president and vice president because "[t]he complaint does not tie [them] to the

[constitutional violation]"); *Cranford v. King*, No. 1:14-CV-01002-MJS PC, 2014 WL 3529796, at

*3 (E.D. Cal. July 16, 2014) (dismissing claim of conscious indifference where involuntarily

committed plaintiff "allege[d] only that he was assaulted by patients").

      The Doctors' Motion to Dismiss Plaintiff's cause of action for conscious indifference to

unsafe conditions under section 1983 is GRANTED.  Because Plaintiff may be able to cure the

deficiencies in her complaint by alleging additional facts supporting this cause of action, the Court

grants leave to amend.  *See Lopez*, 203 F.3d at 1127 (holding that "a district court should grant

leave to amend . . . unless it determines that the pleading could not possibly be cured by the

allegation of other facts").

### 2.      Supervisor Liability (Third Cause of Action)

      In *Iqbal*, the Supreme Court explained that in a section 1983 action, "the term 'supervisory

liability' is a misnomer," since "each Government official, his or her title notwithstanding, is only

liable for his or her own misconduct."  556 U.S. at 677.  Under section 1983, the Court held, there

is no "vicarious liability" or liability "under a theory of *respondeat superior*."  *Id.* at 676.

Nonetheless, "[a] defendant may be held liable as a supervisor under § 1983 'if there exists either

(1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal

connection between the supervisor's wrongful conduct and the constitutional violation.'"  *Starr*,

652 F.3d at 1207 (quoting *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989)).

      For the same reasons articulated above, *see supra* Part III.A.1, Plaintiff has not plausibly

alleged supervisor liability under section 1983.  By failing to distinguish the Doctors' individual

roles and conduct, Plaintiff has not sufficiently pled individual personal involvement in the alleged

wrongdoing.  *See Barren*, 152 F.3d at 1194.  Plaintiff's indiscriminate allegations that the Doctors

were "hospital administrators and supervisory administrators of Watsonville Community Hospital

and Security Code 3" do not suffice.  Compl. ¶ 65.  As a result, Plaintiff has failed to state a claim

of supervisor liability under section 1983.  *See Henry A. v. Willden*, 678 F.3d 991, 1004 (9th Cir.

13

Case No.: 5:14-CV-01053-LHK
ORDER GRANTING MOTION TO DISMISS DEFENDANTS KAPLAN, LEWIS, AND SIMON WITH LEAVE TO
AMEND

**United States District Court**
For the Northern District of California

1    2012) (finding that general allegations about defendants' "oversight responsibility for Clark

2    County's foster care system" failed to state a claim for supervisor liability under section 1983).

3        The Doctors' Motion to Dismiss Plaintiff's cause of action for supervisor liability under

4    section 1983 is GRANTED.  Because Plaintiff may be able to cure the deficiencies in her

5    complaint by alleging additional facts supporting this cause of action, the Court grants leave to

6    amend.  *See Lopez*, 203 F.3d at 1127.

7                    **3.      Failure to Train (Fourth Cause of Action)**

8        A local government, or its officials acting in their official capacity, "can be liable under

9    § 1983 for inadequate training of its employees."  *City of Canton v. Harris*, 489 U.S. 378, 388

10   (1989).  To establish liability for failure to train, a plaintiff must show that (1) she "was deprived of

11   a constitutional right"; (2) the municipality or its officials "had a training policy that 'amounts to

12   deliberate indifference to the [constitutional] rights of the persons with whom [its subordinates] are

13   likely to come into contact'"; and (3) her "constitutional injury would have been avoided" had the

14   municipality or its officials properly trained those subordinates.  *Blankenhorn v. City of Orange*,

15   485 F.3d 463, 484 (9th Cir. 2007) (first alteration in original) (quoting *Lee v. City of L.A.*, 250 F.3d

16   668, 681 (9th Cir. 2001)).  For purposes of "deliberate indifference," a plaintiff "must demonstrate

17   a 'conscious' or 'deliberate' choice on the part of a municipality in order to prevail on a failure to

18   train claim."  *Flores v. Cnty. of L.A.*, 758 F.3d 1154, 1158 (9th Cir. 2014) (internal quotation marks

19   omitted).

20       "A pattern of similar constitutional violations by untrained employees is ordinarily

21   necessary to demonstrate deliberate indifference for purposes of failure to train."  *Connick v.*

22   *Thompson*, 131 S. Ct. 1350, 1360 (2011).  However, "in a narrow range of circumstances, a pattern

23   of similar violations might not be necessary to show deliberate indifference."  *Id.* at 1361 (internal

24   quotation marks omitted).  This "narrow range of circumstances" may exist only when (1) "the

25   need for more or different training is so obvious"; and (2) the inadequacy of training is "so likely to

26   result in the violation of constitutional rights."  *Canton*, 489 U.S. at 390.  The only example of such

27   circumstances the Supreme Court has yet "hypothesized" is where a municipality "arms its police

28

Case No.: 5:14-CV-01053-LHK
ORDER GRANTING MOTION TO DISMISS DEFENDANTS KAPLAN, LEWIS, AND SIMON WITH LEAVE TO
AMEND

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1   force with firearms and deploys the armed officers into the public to capture fleeing felons without

2   training the officers in the constitutional limitation on the use of deadly force." *Connick*, 131 S. Ct.

3   at 1361 (citing *Canton*, 489 U.S. at 390 n.10).  In proffering that hypothetical, "[t]he Court sought

4   not to foreclose the possibility, however rare, that the unconstitutional consequences of failing to

5   train could be so patently obvious that a city could be liable under § 1983 without proof of a pre-

6   existing pattern of violations." *Id.*

7          If, on the contrary, the proper behavior is so obvious *without* any training, the failure to

8   train does not support a finding of deliberate indifference.  In *Flores*, for example, the Ninth

9   Circuit affirmed dismissal of a failure to train claim brought by a plaintiff who alleged she had

10  been sexually assaulted by a deputy sheriff. 758 F.3d at 1156.  "Given that the penal code

11  prohibits sexual battery," the court found it "not plausible that inclusion in the [sheriff's] Manual of

12  the language that Flores proposes would have prevented the assault." *Id.* at 1160.  As the proper

13  behavior should have been so obvious to any deputy sheriff, the court in *Flores* found that no

14  amount of training or instruction would have made a difference.  *See id.* ("[T]here is not a patently

15  obvious need for the city specifically to train officers not to rape young women." (internal

16  quotation marks and alterations omitted)).

17         Plaintiff has not plausibly alleged a failure to train claim under section 1983.  In the first

18  place, Plaintiff alleges no pattern of constitutional violations by untrained employees.  To state a

19  claim, then, her allegations must fall within the "narrow range of circumstances" that do not

20  require a pattern of constitutional violations.  *See Connick*, 131 S. Ct. at 1361.  Yet here, as in

21  *Flores*, there is "every reason to assume that [security guards] are familiar with the criminal

22  prohibition on sexual assault, as everyone is presumed to know the law." 758 F.3d at 1160.  It is

23  not so "patently obvious" that the Doctors' alleged failure to train Maldonado would have resulted

24  in Maldonado's commission of sexual assault of a minor female patient.  *Id.*  Consequently,

25  Plaintiff has made no showing that the Doctors' alleged failure to train security guards falls within

26  the narrow range of circumstances such that a pattern of constitutional violations is not required.

27

28

1    Furthermore, even if Plaintiff had made such a showing, she still has not alleged conduct

2    specific to each individual doctor.  Plaintiff makes no allegation as to which of the Doctors played

3    what role in failing to train hospital security guards such as Maldonado.  Because Plaintiff fails to

4    allege facts regarding the individual conduct of each of the Doctors, *see supra* Part III.A.1, she has

5    not stated a claim for failure to train under section 1983, *see Barren*, 152 F.3d at 1194 ("Liability

6    under § 1983 must be based on the personal involvement of the defendant."); *see also Shallowhorn*

7    *v. Molina*, 572 F. App'x 545, 546-47 (9th Cir. 2014) (affirming dismissal of failure to train claim

8    against prison warden because plaintiff had failed to allege "personal involvement with any

9    constitutional violation").

10    The Doctors' Motion to Dismiss Plaintiff's cause of action for failure to train under section

11    1983 is GRANTED.  Because Plaintiff may be able to cure the deficiencies in her complaint by

12    alleging additional facts supporting this cause of action, the Court grants leave to amend.  *See*

13    *Lopez*, 203 F.3d at 1127.

14    **4.    Liability for Official Policy and Ratification (Fifth Cause of Action)**

15    A local government may be held liable under section 1983 where: (1) implementation of the

16    local government's official policies or established customs inflicts the constitutional injury; (2) acts

17    of "omission" amount to the local government's own official policy; or (3) the individual who

18    committed the constitutional tort was an official with final policy-making authority or such an

19    official ratified a subordinate's unconstitutional decision or action and the basis for it.  *Clouthier v.*

20    *Cnty. of Contra Costa*, 591 F.3d 1232, 1249-50 (9th Cir. 2010) (citing *Monell v. Dep't of Soc.*

21    *Servs.*, 436 U.S. 658 (1978)).  "To show ratification, a plaintiff must prove that the 'authorized

22    policymakers approve a subordinate's decision and the basis for it.'"  *Christie v. Iopa*, 176 F.3d

23    1231, 1239 (9th Cir. 1999) (quoting *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988)).

24    Plaintiff alleges two constitutional torts in this litigation.  First, she claims that

25    Maldonado's sexual assault of her amounted to an unreasonable seizure, in violation of the Fourth

26    Amendment.  Compl. ¶ 45.  Second, she contends that WCH and its staff, including the Doctors,

27    failed to provide safe conditions for an involuntarily committed minor, in violation of the Due

28

Case No.: 5:14-CV-01053-LHK
ORDER GRANTING MOTION TO DISMISS DEFENDANTS KAPLAN, LEWIS, AND SIMON WITH LEAVE TO
AMEND

**United States District Court**
For the Northern District of California

1    Process Clause of the Fourteenth Amendment. *Id.* ¶ 51.  To prevail under *Monell*, Plaintiff must

2    plausibly allege that these torts were committed pursuant to an official policy of WCH or the

3    Doctors.  Plaintiff makes no allegation that Maldonado's sexual assault was committed pursuant to

4    any official policy.  Instead, Plaintiff claims that an official policy of having untrained security

5    guards monitoring patients was a "moving force[] behind the violations of [her] constitutional

6    rights." *Id.* ¶ 78.

7           This allegation is no more than a "naked assertion devoid of further factual enhancement."

8    *Iqbal*, 556 U.S. at 678.  Plaintiff has advanced no factual support for her repeated allegation that

9    WCH, its doctors included, adhere to an official policy "of having untrained security guards

10   monitor and supervise mental patients while alone with the patients during the patients' period of

11   involuntary commitment."  Compl. ¶ 78.  Nor has Plaintiff advanced any factual support for the

12   allegation that the Doctors' supposed policy was a "moving force[]" behind either Maldonado's

13   sexual assault or the Doctors' alleged violation of Plaintiff's Fourteenth Amendment rights. *Id.*  As

14   Plaintiff points to no facts supporting the existence of an official policy, Plaintiff cannot state a

15   claim for conduct pursuant to that policy under section 1983. *See Hobbs v. City of Long Beach*,

16   534 F. App'x 648, 651 (9th Cir. 2013) (affirming grant of summary judgment to defendant because

17   "although [plaintiff] contends the city is liable because of its alleged history of retaliation against

18   whistleblowers, he has presented no evidence that such a policy existed").

19          As for ratification, Plaintiff alleges that the Doctors "took no corrective action in that they

20   continued to implement their official policy and/or practice of having untrained security guards

21   monitor and supervise mental patients while alone with the patients during the patients' period of

22   involuntary commitment."  Compl. ¶ 80.  This perfunctory allegation falls short.  Plaintiff fails to

23   allege anything that the Doctors did or did not do following Maldonado's arrest, presumably the

24   time the Doctors were first made aware that he had sexually assaulted Plaintiff.  There is no

25   allegation, for example, that the Doctors had any knowledge of Maldonado's unlawful conduct at

26   the time Plaintiff was readmitted to WCH, or that the Doctors knew anything about Maldonado's

27   subsequent encounters with Plaintiff.  Nor is there any allegation that the Doctors possessed "final

28

United States District Court
For the Northern District of California

17

Case No.: 5:14-CV-01053-LHK
ORDER GRANTING MOTION TO DISMISS DEFENDANTS KAPLAN, LEWIS, AND SIMON WITH LEAVE TO
AMEND

policy-making authority." *Clouthier*, 591 F.3d at 1250.  Plaintiff alleges only that the general

training and monitoring policy, whatever it was, has not changed.  *See* Compl. ¶ 80.  Such "naked

assertion[s]" are insufficient to support a finding that the alleged policy even existed, let alone that

the Doctors were authorized policymakers who ratified it.  *Iqbal*, 556 U.S. at 678; *see also Sheehan

v. City & Cnty. of S.F.*, 743 F.3d 1211, 1231 (9th Cir. 2014) (rejecting failure to train claim and

finding no ratification because "[t]he mere failure to discipline [subordinates] does not amount to

ratification of their allegedly unconstitutional actions"); *Romero v. Cnty. of Santa Clara*, No. 11-

CV-04812-WHO, 2014 WL 4978473, at *2 (N.D. Cal. Oct. 6, 2014) (granting judgment on the

pleadings to defendants where plaintiff "has not alleged that his constitutional harms were either

committed or ratified by an 'official with final policymaking authority,' and he has not presented

any evidence of a formal policy of First Amendment retaliation" (citation omitted)).

Plaintiff also fails to state a claim because she does not allege facts specific to each

individual doctor and how each doctor acted pursuant to or ratified any official policy that may

have existed.  *See supra* Part III.A.1; *see also Barren*, 152 F.3d at 1194.  Plaintiff, thus, has failed

to state a claim based on an official policy and ratification under section 1983.  *See Jarreau-Griffin

v. City of Vallejo*, No. 2:12-CV-02979-KJM, 2013 WL 6423379, at *7-8 (E.D. Cal. Dec. 9, 2013)

(dismissing plaintiff's ratification claim under section 1983 for "fail[ure] to identify an affirmative

choice by [defendants] to approve [another's] actions").

The Doctors' Motion to Dismiss Plaintiff's cause of action based on an official policy and

ratification under section 1983 is GRANTED.  Because Plaintiff may be able to cure the

deficiencies in her complaint by alleging additional facts supporting this cause of action, the Court

grants leave to amend.  *See Lopez*, 203 F.3d at 1127.

**B.  State Law Claims**

Since the parties in this case are non-diverse, *see* Compl. ¶¶ 9-15, the now-dismissed

section 1983 claims provide the sole bases for federal subject matter jurisdiction.  While a federal

court may exercise supplemental jurisdiction over state law claims "that are so related to claims in

the action within [the court's] original jurisdiction that they form part of the same case or

18

United States District Court
For the Northern District of California

controversy under Article III of the United States Constitution," 28 U.S.C. § 1367(a), a court may decline to exercise supplemental jurisdiction where it "has dismissed all claims over which it has original jurisdiction," *id.* § 1367(c)(3); *see also Satey v. JPMorgan Chase & Co.*, 521 F.3d 1087, 1091 (9th Cir. 2008) ("The decision whether to continue to exercise supplemental jurisdiction over state law claims after all federal claims have been dismissed lies within the district court's discretion." (internal quotation marks omitted)).  A court, in considering whether to retain supplemental jurisdiction, should consider factors such as "economy, convenience, fairness, and comity." *Acri v. Varian Assocs.*, 114 F.3d 999, 1001 (9th Cir. 1997) (en banc) (internal quotation marks omitted).  That said, "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state law claims." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988).

Here, the balance of factors weighs in favor of dismissing Plaintiff's remaining state law claims.  This case has yet to proceed beyond the pleadings, and thus few judicial resources are wasted by dismissing the case at this stage.  Further, dismissal promotes comity by allowing the California courts to interpret state law concerning the state law claims in the first instance.  The Court therefore declines to exercise supplemental jurisdiction over the remaining state law claims—namely, Plaintiff's claims for negligence, violation of the Unruh Act, IIED, and civil conspiracy.

Accordingly, because the Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims, the Court GRANTS the Motion to Dismiss Plaintiff's state law claims without prejudice.

## IV.    CONCLUSION

For the reasons stated above, the Court GRANTS the Doctors' Motion to Dismiss Plaintiff's section 1983 claims with leave to amend.  The Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state law claims and thus GRANTS the Motion to Dismiss Plaintiff's state law claims without prejudice.

Case No.: 5:14-CV-01053-LHK
ORDER GRANTING MOTION TO DISMISS DEFENDANTS KAPLAN, LEWIS, AND SIMON WITH LEAVE TO AMEND

United States District Court
For the Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Should Plaintiff elect to file an amended complaint curing the deficiencies identified herein, she shall do so within 30 days of the date of this Order.  Failure to meet the 30-day deadline to file an amended complaint or failure to cure the deficiencies identified in this Order will result in a dismissal with prejudice.  Plaintiff may not add new causes of actions or parties without leave of the Court or stipulation of the parties pursuant to Federal Rule of Civil Procedure 15.

**IT IS SO ORDERED.**

Dated: October 28, 2014

LUCY H. Koh
United States District Judge

Case No.: 5:14-CV-01053-LHK
ORDER GRANTING MOTION TO DISMISS DEFENDANTS KAPLAN, LEWIS, AND SIMON WITH LEAVE TO AMEND